# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## DOCKET NO. 3:07CR154-C

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| ALVIN WOODY (1), KATHLEEN | ) | |
| GIACOBBE (2), PORFIRIO ORTA- | ) | |
| ROSARIO (3), STEPHEN | ) | |
| GIACOBBE (4), and CHRISTOPHER | ) | |
| OTIKO (5), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on "Defendant Alvin Woody's Motion . . . In The Alternative . . . To Appoint A Special Master" filed August 30, 2007 (document #64), and on referral from the Honorable Robert J. Conrad, Jr. by Order entered December 4, 2007 (document #79).  In his December 4 Order Judge Conrad denied the other relief requested by Defendant Woody in the subject Motion (that is, the alternative motions to dismiss and to suppress evidence), but referred the "Motion . . . To Appoint A Special Master" to the undersigned for an evidentiary hearing and thereafter for resolution.

For the reasons stated herein, and for the further reasons set forth in the "Government's Response In Opposition . . ." (document #70) and the "Government's Arguments In Support of The Adequacy of The Taint Procedure Implemented By The Government" filed February 15, 2008 (document #98), the Defendant's Motion will be <u>denied</u>.

The undersigned conducted the required hearing on January 17, 2008 at which Craig A. Gillen of Atlanta, Georgia and Janet Kravitz of Columbus, Ohio were present for Defendant Alvin

Woody. Present for the Government were Dana O. Washington and Melissa K. Rikard, the Assistant United States Attorneys prosecuting this case, and Jennifer A. Youngs, the Assistant United States Attorney who has served as the Government's "taint attorney" since Ms. Kravitz notified the Government that she believed materials protected by the attorney-client privilege had been seized from Mr. Woody's pharmacies in Mooresville and Denver, North Carolina when search warrants were executed at these locations on May 23, 2006. Ms. Youngs is a supervisor in the U.S. Attorney's Office's Civil Division; other than serving as taint attorney, she has had no role in the criminal prosecution of this or any related matter.

The task of resolving the remaining part of Mr. Woody's Motion was considerably simplified by the Court's December 4, 2007 Order in which Judge Conrad noted the Defendant's concession [at a hearing held December 3] "that there was no evidence that any privileged information of the defendant had been provided to the prosecution team or to any other defendant." Accordingly, Judge Conrad found no basis for either dismissing the indictment or suppressing all of the seized documents. The testimony at the January 17 hearing confirmed the basis of the Court's December 4, 2007 Order, that is, that there is no evidence that any privileged information of defendant Woody has been provided to the prosecution team or to any other defendant.[1]

---

[1] The DEA Diversion Investigators in charge of the Mooresville (Investigator Charles Carpenter) and Denver (Investigator Alan Eaves) searches testified that they did a cursory review of documents being seized at the Pharmacies and if they observed a legal letterhead or an obvious legal document were instructed or determined either not to seize it (Denver) or to put it in an envelope and sealed it (Mooresville). Investigator Carpenter testified that he identified and isolated a small number of documents in this manner during the Mooresville search and thereafter delivered them in separate boxes to AUSA Jennifer Youngs in her capacity as taint attorney. Investigator Eaves testified that no documents believed to be privileged were brought to his attention or discovered during the Denver search or in a subsequent review of those documents in DEA's Greensboro Office. Both Investigators also testified that they conducted a similarly cursory review of electronic documents at some point during the taint review process, and were instructed to "tag" any documents that might be privileged for later review by Ms. Youngs. Investigator Carpenter testified that he identified a certain number of documents for subsequent review, but did not read them once he saw a lawyer or law firm name on them. Investigator Eaves testified that he identified no electronic documents to "tag" for later review.

Regarding the alternative "Motion . . . To Appoint A Special Master," the December 4, 2007 Order directs the undersigned "to hear and determine whether the procedure implemented by the government is sufficient to protect against the unauthorized disclosure of privileged information [in the future], and, if not, to prescribe the appropriate measures." The presiding judge also directed the undersigned "[to] resolve any future controversy whether a particular piece of evidence is privileged, pending further order of the Court."

Much of the Defendant's factual and legal argument in support of the appointment of a Special Master is weakened or foreclosed by Judge Conrad's December 4 Order. However, because the argument in favor of the relief which has been denied (dismissal and suppression of evidence) overlaps with the argument in favor of appointment of a Special Master, the Defendant's arguments in support of the Motion generally will be summarized here.

Essentially, Mr. Woody argues in his Motion that one of his attorneys articulated concern to the Government about the protection of privileged communications shortly after the May 23, 2006 searches; that, in response, the Government created a "taint team" to prevent the viewing by prosecutors of privileged documents; and that counsel for the Defendant first received a set of documents identified as potentially privileged on or about June 16, 2006, but were unsatisfied with the production because none of the identified materials came from "the 5 computer hard drives seized or 17 hard drives mirrored" during or following the subject searches. Mr. Woody's concerns regarding the document organization and taint review process were thereafter expressed in "many telephone calls and emails [from counsel] inquiring as to the status of the next privileged document submission," which occurred eleven months later (on or about May 15, 2007). The Defendant's concerns about the Government's document review process were confirmed, he notes, when the

second submission of potentially privileged materials "were not Bates-stamped or identified in any way," and certain of the submitted materials apparently came not from the searches of either of the Woody Pharmacies, but from the simultaneous search of the residence and/or business of co-defendant Kathleen Giacobbe (in Vermont).

Arguing that the above establishes that there are "very serious issues regarding the integrity of both the government's document maintenance/chain of custody procedures and the government's taint team procedures," and citing authority from other districts and circuits which he believes stand for the proposition that "[t]he rise of taint teams to protect the attorney-client privilege is highly disfavored," Mr. Woody moves the Court, in the alternative (to dismissal and/or suppression of all seized evidence), to appoint a Special Master "to conduct a review of the deficiencies in the document maintenance and taint team process utilized by the United States Attorney's Office."

The "Government's Response In Opposition . . ." (document #70, including the attached "Declaration of Jennifer A. Youngs"), and the evidence and argument presented at the January 17, 2008 hearing, convince the Court that the Defendant's alarm is unsupported by more than speculation – much of which was rejected by Judge Conrad in the Court's December 4, 2007 Order – and therefore, that the appointment of a Special Master in this case is unnecessary. Specifically, the Court credits the Government's showing and averments in its written pleadings, which were supported by the evidence and argument presented at the January 17 hearing, that supervisory AUSA Jennifer A. Youngs was appointed to serve as "taint attorney" two days after the subject searches; that, utilizing a list of terms provided by Defendant Woody's attorneys (and expanded by Ms. Youngs), the seized computer records were thereafter systematically searched for potentially privileged materials; and that Ms. Youngs was otherwise "walled off" from any other role in the

ongoing investigation or prosecution.

Although defense counsel complains about documents seized from Defendant Giacobbe being produced with documents seized from Defendant Woody for their review, this fact is actually corroborative of the Government and Ms. Youngs' assertion that "[s]he was provided with no background information about any relationship that existed between the defendants nor . . . with any information as to how the criminal enterprise operated." Indeed, the "wall" created for purposes of the subject document review included keeping the taint attorney in the dark about "where the documents came from, to whom they belonged, or who found them." Thus, although the Government ideally would have kept documents seized from different locations segregated, the fact that the taint attorney returned the potentially privileged documents (including those identified from the computer records) in the same fashion as they were presented to her corroborates the Government's assertion that Ms. Youngs' only knowledge of the investigation or prosecution was what she may have gleaned from the documents it was her sole responsibility to review.

Furthermore, as has been noted, the Government's representation that the subject documents were only forwarded to Defendant Woody's attorneys (which fact was conceded by defense counsel at the December 3, 2007 hearing and served as the partial basis of Judge Conrad's denial of the alternative relief in the Court's Order entered the next day) undercuts much of the Defendant's largely speculative claim of past and future prejudice. To the contrary, the Court finds that the Government has taken, and has credibly assured that it will continue to take, sufficient precautions to shield any privileged documents from the prosecution team; that neither the prosecution team nor any other defendant has received Defendant Woody's privileged material; that the Court is capable of determining whether individual documents are protected by the attorney-client privilege, if

necessary; and that there are a limited number of documents which have been identified as potentially privileged in any event and currently ***no disputes*** between counsel over any of them.

The testimony of the five witnesses at the January 17, 2008 hearing confirmed rather than impugned the integrity of the taint review process established by the Government in this case. Specifically, DEA Diversion Investigator Charles D. Carpenter, Jr. testified that he was the Case Agent in charge of the search of the Woody Pharmacy in Mooresville; that he was instructed by his supervisor, and that he instructed those who were assisting in the search, to seal any document that appeared on its face to be potentially privileged in an envelope, and to place any such isolated documents in a separate box; that of the large volume of seized materials (which filled more than forty bankers boxes), few were identified as potentially privileged; that review of these documents was cursory and superficial – e.g., looking for an attorney or law firm name or address; and that he did not read the documents and, in fact, would not be able even to identify these documents if they were shown to him today.

Regarding the items seized during the search of codefendant Kathleen Giacobbe's Vermont business and/or residence (conducted the same day), Investigator Carpenter testified that DEA Diversion Investigator Chris Paquette was in charge of the Vermont search(es); that documents were not initially reviewed in any manner, but rather were packed in boxes and sent to the DEA office in Greensboro, North Carolina for initial review; that he and Investigator Eaves conducted this initial review of the documents seized in Vermont and it was apparent that no review or sorting had taken place in Vermont – for example, citing the inclusion of owners manuals for a refrigerator and a microwave in the boxes of seized materials; and that during review of the Vermont materials in Greensboro, a similar process to that employed during search of the Mooresville pharmacy was

followed, namely, where the name of a lawyer or law firm was observed on a document or where similarly cursory review led to the preliminary conclusion that a document might be privileged, it was isolated, placed in a sealed envelope, and delivered thereafter to AUSA Youngs for analysis and review in her capacity as taint attorney.

Investigator Carpenter testified on cross-examination that prior to the searches he was aware of no directive or guidance given as to how potentially privileged materials should be handled; that guidance regarding isolating these materials came from the U.S. Attorney's Office and was communicated to those conducting the Mooresville search through DEA Supervisor Brian Reese; that he was aware at the time of the search that "the Kravitz law firm" represented Defendant Woody, but was unaware (at that time) of related civil litigation in Florida or South Carolina; that he does not know why there was "such a gap" between the first and second delivery of privileged materials to the Kravitz law firm (on June 16, 2006 and May 15, 2007); that he believes review of the electronic data for privileged materials was completed (by AUSA Jennifer Youngs) sometime during the Summer of 2007; that as one of the "Case Agents" he has discussed legal strategy with the prosecution team from time to time; and that he is aware of no protocol regarding keeping potentially privileged documents seized from one Defendant separate from potentially privileged documents seized from other Defendants.

Assistant U.S. Attorney Jennifer Youngs, the Government's second witness at the January 17 hearing, testified that she received "hard copy" documents seized in the two North Carolina searches and the Vermont search(es) in two different sets, and later received the electronic data, first on CD ROMs and later "the entire database" form the mirrored computer hard drives; that no document she identified as privileged was given at any time to any member of the prosecution team

or to any lawyer except "the Kravitz law firm" (which represents Defendant Woody); and that she sent copies of all seized documents to the Kravitz law firm, whether or not they were privileged, with the exception of copies of their own billing records; and that she received no objection to the first set of materials sent to the Kravitz law firm, but confirmed that questions were raised when items from the Vermont search(es) were included in the second set of materials (sent to the Kravitz law firm on or about May 15, 2007).

Regarding her taint review of the voluminous electronic data seized, AUSA Youngs testified that she initially searched using a list of terms provided by the Kravitz law firm <u>and</u> an additional list of terms she created and which had the effect of identifying a greater number of materials as potentially privileged. After she reviewed each identified document, she instructed the DEA computer specialists in Washington, DC to remove any document deemed to be privileged from the database, which was itself a time-consuming process. Thereafter Ms. Youngs reviewed 25 CD ROMs <u>and</u> the entire electronic database for potentially privileged materials – twice – a process that she estimates required approximately 250 hours of her time. Subject only to the Court's resolution of the subject Motion, the electronic discovery has gone through a final "scrubbing," and is now in a condition to be provided to defense counsel.

The Government's third witness, Tucker Grier, testified that he has been employed by the United States Attorney's Office for the Western District of North Carolina as an "Automated Litigation Specialist" for five years; that 39 computer hard drives were mirrored during or following the subject searches; and that these hard drives had a total storage capacity of "two and a half terabytes," one terabyte equaling 1,000 gigabytes. Mr. Grier testified that one gigabyte could store approximately 100,000 pages, which means that the 39 mirrored hard drives had the capacity to store

approximately 250 million pages – thus the need, which is customary practice, to develop "search terms" to identify for review any potentially privileged materials. Mr. Grier further testified that his role was a technical one, assisting AUSA Youngs in her review of the CD ROMs and electronic database, training the DEA Diversion Investigators to "tag" electronic materials, and creating a separate database of any tagged materials for Ms. Youngs' subsequent review. Finally, Mr. Grier testified that of the hundreds of thousands of pages reviewed for potentially privileged materials only "fifty to seventy records" were tagged and removed; that the electronic database was not finally ready to produce to defense counsel until the week before the hearing (the week of January 7, 2008); that the electronic discovery has not yet been produced to any attorney; and that he has not discussed the contents of the electronic discovery with the prosecutors handling this case.

The Government's last two witnesses – DEA Diversion Investigator Alan M. Evans and FBI Special Agent Julia M. Mueller – were brief and substantially corroborative of prior testimony. Investigator Evans testified that he was in charge of the search of the Woody Pharmacy in Denver, North Carolina; that he advised those assisting with the search "not to seize anything with an attorney's name on it"; that the documents seized filled approximately 30 bankers boxes (which he described as mostly prescription information, correspondence with customers, and "daily logs for controlled substances"); and that he neither himself found nor had any other agent assisting in the search found any potentially privileged materials. Regarding electronic materials, as in the Mooresville search, Investigator Evans testified that hard drives were either mirrored on the scene or seized and sent to the DEA offices in Washington, DC to be mirrored. And finally, Investigator Evans testified that in his similarly cursory review of electronic discovery, he does not recall "tagging" any materials as potentially privileged.

Special Agent Mueller, the Government's final witness, testified that she became involved in the investigation in November 2006 – six months after the searches, but that she had thereafter reviewed the electronic discovery materials and had found one document, "an Excel spreadsheet," which she believed might be privileged. Special Agent Mueller further testified that "in an abundance of caution" it was determined that the spreadsheet, which was not otherwise described in her testimony, would not be used by the Government in the prosecution of Mr. Woody or his co-defendants.

At the conclusion of the evidentiary hearing, rather than making an oral closing argument defense counsel requested an opportunity to review a transcript of the hearing and to file a written closing argument on or before February 15, 2008. With the Government's concurrence, defense counsel's request was granted and final arguments have since been filed. See "Government's Arguments In Support of The Adequacy of The Taint Procedure Implemented By The Government" filed February 15, 2008 (document #98), and "Defendant Alvin Woody's Written Submission Regarding Taint Hearing" refiled February 19, 2008 due to a temporary malfunction in the Court's electronic case filing system (document #100).

**NOW THEREFORE**, "Defendant Alvin Woody's Motion . . . In The Alternative . . . To Appoint A Special Master" filed August 30, 2007 (document #64) is **DENIED**.

The Clerk is directed to send copies of this Memorandum and Order to Craig A. Gillen, Janet Kravitz, and R. Deke Falls, counsel for Defendant Woody; to Dana O. Washington, Melissa K. Rikard, and Jennifer A. Youngs, all Assistant United States Attorneys representing the Government; and to Chief District Judge Robert J. Conrad, Jr.

**SO ORDERED.**

Signed: February 20, 2008

Carl Horn, III
United States Magistrate Judge